# 95 DTA 26

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

HECTOR L. BAEZ DIAZ
Peticionario

Núm. KLCE-95-00031

San Juan, Puerto Rico, a 15 de marzo de 1995

Panel integrado por su presidente, Juez Sánchez Martínez,
y los Jueces Rodríguez de Oronoz y Segarra Olivero

## TEXTO COMPLETO DE LA RESOLUCION

Mediante el recurso de autos, el denunciado recurrente nos pide que revoquemos una resolución del Tribunal de Primera Instancia, Subsección de Distrito, Sala de Bayamón (Hon. Angel L. Robles Candelaria, J.), que denegó una moción de traslado de la vista preliminar. El denunciado-recurrente sostiene que el tribunal *a quo* estaba obligado a celebrar una vista evidenciaria antes de denegar la moción de traslado. No tiene razón.

### I

En síntesis, los hechos que alega el denunciado-recurrente sobre los cuales basa su recurso, que para fines del recurso únicamente consideraremos como ciertos, son los siguientes:

Contra el denunciado-recurrente se presentaron denuncias por los delitos de asesinato en primer grado, Art. 83 del Código Penal, 33 L.P.R.A. sec. 4002, e infracciones a los Arts. 6 y 8 de la Ley de Armas, 25 L.P.R.A. secs. 416 y 418. En la vista de causa probable para arresto se determinó causa por asesinato en segundo grado y por las infracciones a la Ley de Armas. La vista preliminar quedó señalada para el 14 de diciembre de 1994. También se hizo un señalamiento de *"conferencia con antelación a la vista preliminar"* para el 5 de diciembre de 1994.

En la *"conferencia con antelación a la vista preliminar",* el abogado defensor solicitó la transferencia de la vista preliminar por conflicto en su calendario. El tribunal accedió y la señaló para el 13 de enero de 1995. Sin embargo, es evidente que los testigos de cargo (los perjudicados) no fueron advertidos de la suspensión de la vista preliminar y, ese día, al acudir a la oficina del Fiscal de Distrito se enteraron de la determinación de causa probable para arresto por el delito menor incluido de asesinato en segundo grado. También es aparente que habiendo manifestado las víctimas o perjudicados su inconformidad con tal fallo judicial, el Fiscal de Distrito decidiera acudir en alzada de dicha determinación.

El abogado del denunciado-recurrente alega que, estando en los predios del tribunal ese día, se enteró --por un fiscal de sala-- que los perjudicados habían ido a ver al Fiscal de

Distrito. El abogado defensor se comunicó entonces con el Fiscal de Distrito, Hon. Eduardo de Jesús García, y éste le informó que había decidido acudir en alzada. En efecto, ese mismo día el Fiscal de Distrito solicitó por teléfono al juez administrador del Tribunal de Distrito, Hon. Rafael Flores, una fecha para la celebración de la vista de causa probable para arresto en alzada y el juez le señaló la vista para el 20 de diciembre de 1994. El Fiscal de Distrito le notificó ese hecho al abogado defensor del denunciado-recurrente mediante entrega personal de una moción de vista en alzada.

El día antes de la vista en alzada (19 de diciembre de 1994), el abogado defensor solicitó la transferencia de la misma por conflicto en el calendario y porque no se le habían entregado ciertas declaraciones juradas a que tenía derecho. En la mañana del 20 de diciembre de 1994 (día de la vista en alzada), el abogado defensor insistió en su solicitud de suspensión ante el juez que tenía asignado el caso, Hon. Edwin Ruiz, expresándole el conflicto de señalamientos que tenía para ese día. El juez le concedió un turno posterior.

A las 2:00 de la tarde, el Juez Ruiz expresó en corte abierta que la moción de suspensión presentada por el denunciado-recurrente había sido denegada por el juez administrador del Tribunal de Distrito, Hon. Rafael Flores. El abogado defensor planteó que no constaba que el caso hubiese sido señalado por el tribunal y que él entendía que había sido el fiscal quien lo había *"autoseñalado"*. El Juez Ruiz le concedió 45 minutos para prepararse. Celebrada la vista, el tribunal determinó causa probable para el arresto por el delito originalmente imputado de asesinato en primer grado. La vista preliminar quedó señalada para la fecha en que estaba señalada la vista preliminar de los demás casos por infracciones a la Ley de Armas, es decir, para el 13 de enero de 1995.

Llegado el día señalado, la vista preliminar fue llamada en la sala de la Hon. María J. Busó Aboy. El fiscal de sala, Lic. Efraín Cardona, solicitó el aplazamiento de la vista preliminar por diez días ya que le faltaba un testigo esencial pero la juez Busó denegó su petición. La Juez dispuso que se localizara y trajera al testigo esencial y concedió hasta las 11:00 de esa misma mañana para comenzar la vista. Así las cosas, el Fiscal de Distrito, Hon. Eduardo de Jesús García, se presentó a la sala y argumentó una moción de reconsideración. La Juez Busó Aboy denegó la moción de reconsideración. El Fiscal de Distrito entonces informó que siendo las 10:45 de la mañana se proponía presentar un *certiorari*. Aún así, la juez se reiteró en que la vista preliminar comenzaría a las 11:00 a.m.

Lo que ocurrió en los minutos subsiguientes no es del todo claro, pero según lo alegado por el denunciado-recurrente en su recurso, el Fiscal de Distrito se comunicó con el Juez Administrador Regional, Hon. Ramón Gómez Colón, para informarle que tenía que presentar urgentemente un *certiorari* respecto a una vista preliminar que la Juez Busó Aboy se negaba a suspender, la cual estaba pautada para comenzar en varios minutos. El denunciado-recurrente transcribe unas porciones de lo informado en corte abierta por el Fiscal de Distrito, en donde dicho fiscal narra que, en efecto, él se comunicó con el Juez Gómez Colón y que, luego de explicarle lo que estaba sucediendo, el Juez Gómez Colón le expresó que se quedaría en su oficina hasta que llegara el recurso de *certiorari "para verlo, si procede"* y que, además, le indicó que él (el Juez Gómez Colón) *"iba a llamar para que te den un tiempito para radicarlo"*. (Petición, pág. 8, énfasis suplido.)

Aduce el denunciado-recurrente, que cerca de las 10:55 a.m., la juez le pidió al fiscal de la sala y al abogado defensor que pasaran a su despacho. Relata que en su oficina, la Juez Busó Aboy, *"llorosa, temblorosa y con voz entrecortada"*, les manifestó que el juez administrador del Tribunal de Distrito, Hon. Rafael Flores, la llamó para pedirle que le concediera al Fiscal de Distrito la suspensión solicitada *"para asegurar su nombramiento"* como juez (el de la Juez Busó Aboy) y que, por tal razón, se veía obligada a suspender la vista preliminar.

Posteriormente, después de llamado el caso en sala, llegó el Fiscal de Distrito y reiteró la solicitud de suspensión. Esta vez, la Juez Busó Aboy suspendió la vista preliminar para el 20 de enero de 1995 expresando, según el denunciado recurrente, que tenía ciertas preocupaciones. El abogado defensor aduce que intervino en ese momento y trajo a colación las expresiones de la juez en cámara respecto a la llamada que le hizo el juez administrador Flores. También solicitó que se refiriera el asunto al Tribunal Supremo de Puerto Rico. Narra que la juez aceptó el hecho de haber recibido la llamada en cuestión de parte del juez administrador Flores. El Fiscal de Distrito le sugirió a la Juez Busó Aboy que se inhibiera y, a solicitud de la propia juez, quedó en que el fiscal lo solicitaría posteriormente por escrito.

El día señalado para la vista preliminar, la misma fue llamada ante el juez, Hon. Angel L. Robles Candelaria. Para ese momento el Fiscal de Distrito no había presentado moción alguna solicitando la recusación de la Juez Busó Aboy. Tampoco tenía presente al testigo que supuestamente era esencial y cuya ausencia había propiciado la solicitud de suspensión ante la Juez Busó Aboy. El denunciado-recurrente había ido preparado para la vista preliminar pero manifestó que ante el cambio de juez, la ausencia de la moción de recusación prometida por el Fiscal de Distrito y el hecho de estar ausente el testigo esencial cuya ausencia motivó la suspensión anterior, solicitó la suspensión de la vista preliminar. Adujo que necesitaba tiempo para hacer ciertos planteamientos de naturaleza constitucional procesal. El Juez Robles Candelaria le concedió diez días para presentar la moción y diez días al Fiscal de Distrito para contestarla y señaló la vista preliminar para el 24 de febrero de 1995 a las 2:00 de la tarde.

Oportunamente, el denunciado-recurrente presentó la moción de traslado en la cual recogió, en esencia, los hechos antes relatados. Alegó que el señalamiento del 20 de diciembre de 1994 para celebrar la vista de causa probable para arresto en alzada fue un *"autoseñalamiento"* que hizo el propio Fiscal de Distrito porque no consta en ningún expediente judicial alguna orden a esos efectos. También manifestó preocupación por el hecho de que el Fiscal de Distrito aparentemente se comunicó *ex parte* con el Juez Administrador Regional, Hon. Ramón Gómez Colón, y se quejó de que aquél haya utilizado un procedimiento irregular para tramitar una moción de suspensión y el recurso para revisar una resolución judicial. A base de éstos argumentos, el denunciado-recurrente reclamó que no podría obtener un enjuiciamiento justo e imparcial en el Centro Judicial de Bayamón por lo que el caso debía ser trasladado a otro tribunal.

Por su parte, el Fiscal de Distrito se opuso a la moción de traslado. En cuanto al *"autoseñalamiento"* de la vista de causa probable para arresto en alzada, expresó que llamar al juez administrador para conseguir una fecha idónea a sus testigos es el trámite usual en ese tribunal. En cuanto a la llamada recibida por la Juez Busó Aboy, acepta que escuchó sorprendido a la Juez Busó Aboy decir que la habían aconsejado que suspendiera la vista preliminar porque su renominación pudiera afectarse. Niega, sin embargo, toda vinculación a esa llamada. El Fiscal de Distrito termina expresando que el incidente de su llamada al Juez Gómez Colón y lo relatado a las partes por la Juez Busó Aboy, respecto a la llamada recibida del Juez Flores, debe dilucidarse en otro foro. Se opuso, por tanto, a la moción de traslado

El tribunal, en atención al hecho de que en la vista del 20 de enero de 1995 ya le había permitido al denunciado recurrente argumentar oralmente el incidente que sirvió de fundamento a la moción de traslado, denegó por escrito y sin vista adicional la moción de traslado. Resolución de 13 de febrero de 1995. Esta es la resolución de la cual recurre el denunciado-recurrente.

## II
El denunciado-recurrente plantea su solicitud de traslado al amparo de la Regla 81(a) de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.81(a). La regla dispone que

*"[a] solicitud de El Pueblo o del acusado, un tribunal ante el cual se hallare pendiente una causa criminal podrá trasladarla a otra sala por los siguientes fundamentos:*

*(a) Cuando por cualquier razón que no sea una de las enumeradas en la Regla 76 no pueda obtenerse un juicio justo e imparcial en el distrito donde está pendiente la causa."* ■

La Regla 76 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.76, es la que se refiere a los fundamentos de recusación o de inhibición de un juez. Siendo así, la norma general es que la solicitud de traslado de un caso no puede estar fundada en alguna causa de recusación o inhibición de los jueces. Cuando queda establecido que un juez debe abstenerse de entender en un caso por cualquiera de los fundamentos de la Regla 76, otro juez del mismo u otro centro judicial le puede sustituir■ En el proceso penal, ni siquiera es necesario trasladar el caso a otro foro aun cuando el acusado sea juez del mismo tribunal. *Pueblo v. Rodríguez Zayas,* ___ D.P.R. ___ (1995), **95 J.T.S. 3**. El Tribunal Supremo rechazó la pretensión del Fiscal Especial Independiente de trasladar el caso a otra sede del Tribunal de Primera Instancia simplemente por el hecho de que el juez acusado --por varios cargos de soborno-- laborara en dicho centro judicial. En *Rodríguez Zayas,* el Tribunal Supremo de Puerto Rico convalidó como medida apropiada la asignación de un juez de otra jurisdicción a presidir el juicio y la adopción de otras medidas diseñadas por el juez para proteger la integridad del proceso judicial en dicha jurisdicción.

En el caso de autos, el denunciado-recurrente no alega que alguno de los testigos o perjudicados sea pariente o amigo de algún juez o funcionario del tribunal. No se alega relación específica alguna que pudiera servir de base a la inferencia de que ninguno de los jueces de la región judicial de Bayamón puede juzgar imparcialmente este caso. Y esto es lo que precisamente plantea, en esencia, el recurso del denunciado-recurrente. Su moción de traslado se funda en que en el Centro Judicial de Bayamón él no va a conseguir un juicio justo e imparcial porque el Fiscal de Distrito es capaz de influir sobre el criterio judicial de todos los jueces de dicho foro. No ofrece probar, sin embargo, hechos particulares que se refieran a cada uno de los jueces que pudieran intervenir en el caso, sino que, tanto en su solicitud de traslado como en esta petición de *certiorari*, el denunciado-recurrente se limita a recitar el incidente de la suspensión de la vista preliminar ante la juez Busó Aboy.

En este sentido, una vista evidenciaria no tendría ningún propósito útil en este proceso porque el denunciado-recurrente no tiene derecho, como cuestión de ley, a obtener el traslado de esta causa aunque fueran ciertos los hechos alegados en su moción. Precisamente por eso es que, para fines de disponer del planteamiento del denunciado-recurrente únicamente, hemos adoptado como verdaderos tales hechos. Acceder a una vista evidenciaria a todas luces supérflua, solamente puede tener el efecto de una expedición de pesca. La conducta que el denunciado-recurrente le imputa en su moción de traslado a los jueces y fiscales aquí mencionados, podría sujetar a dichos funcionarios a investigaciones disciplinarias por lo que es en ese contexto que deben autorizarse la toma de las deposiciones de los referidos funcionarios.

La moción de traslado es realmente una moción de recusación general de todos los jueces del Centro Judicial de Bayamón con solicitud de remedio de traslado. Esa moción no debe ser concedida ni siquiera ante los hechos invocados en el recurso en cuestión. Los mismos no justifican la recusación en masa de todos los jueces adscritos a la región judicial de Bayamón. Veamos.

El argumento del denunciado-recurrente de que el 13 de enero de 1995 el Fiscal de Distrito, Hon. Eduardo de Jesús García, tuvo comunicaciones *ex parte* con el Juez Administrador Regional, Hon. Ramón Gómez Colón, para gestionar la asignación de un juez del Tribunal Superior para entender en un recurso de *certiorari* que el fiscal se proponía presentar, no pasa

de ser conducta extraprocesal ligada a las prerrogativas del Juez Administrador. De otro lado, la supuesta contestación del juez Gómez Colón de tratar de conseguirle *"un tiempito"* en lo que el fiscal perfeccionaba el recurso, no puede ser interpretado como una promesa del Juez Gómez Colón de influir en el ánimo judicial del juez asignado al caso. Aun cuando el denunciado-recurrente alegue que eso solamente puede interpretarse como dirigido a lograr que la Hon. María J. Busó Aboy le concediera una suspensión de dicha vista, a lo sumo lo que dicho argumento constituye es una queja de naturaleza ética que debe ser presentada y dilucidada ante el Tribunal Supremo.

El denunciado-recurrente aduce que como la juez Busó Aboy se había negado a suspender la vista preliminar esa misma mañana, es evidente que la reconsideración de tal decisión obedeció a la intimidación a la que supuestamente la sometió su juez administrador, Hon. Rafael Flores. Sin embargo, aun cuando en una vista evidenciaria el denunciado-recurrente pudiera establecer que la Juez Busó Aboy se sintió intimidada por éste, por la razón que fuese, y que el Fiscal de Distrito, Hon. Eduardo de Jesús García, tuvo algo que ver con la llamada que ella recibió de su juez administrador, a lo más que tendría derecho el denunciado-recurrente es a pedir la recusación de los Jueces Busó Aboy y Flores.█ Por supuesto, el denunciado-recurrente también tendría derecho a formular querella contra dichos jueces y contra el Fiscal de Distrito pero no al traslado de la causa penal a otro foro.

Sostener lo contrario y resolver que procede el traslado a pesar del texto claro de la Regla 81(a), es presumir que ningun juez del Centro Judicial de Bayamón puede presidir este caso porque no existe en dicho Centro Judicial ningún juez capaz de resistir las supuestas influencias que, según el denunciado-recurrente, ejerce sobre ellos el Fiscal de Distrito de Jesús García. Peor aún, de aceptar el razonamiento jurídico del denunciado-recurrente y trasladar este caso a otro foro por razón de las supuestas presiones de que es capaz de ejercer el Fiscal de Distrito sobre los jueces administradores de los Tribunales de Distrito y del entonces Tribunal Superior, implicaría que ya no se podría ver un caso criminal más en dicho Centro Judicial, al menos, mientras sea Fiscal de Distrito de Bayamón el Hon. Eduardo de Jesús García.

Si el denunciado-recurrente percibe que la actuación de los jueces y fiscales que menciona en su escrito han incurrido en conducta lesiva a los Cánones de Etica Profesional o a los Cánones de Etica Judicial, 4 L.P.R.A. Aps. IX y IV-A, tiene derecho a querellarse ante el foro disciplinario dispuesto por la ley. A lo que no tiene derecho es a que se celebre una vista de traslado al amparo de la Regla 81(a) sin ningún propósito útil o legítimo. Si el denunciado-recurrente percibe que el juez que preside actualmente la vista preliminar está incapacitado para entender en su caso, debe plantearlo mediante moción de recusación al amparo de la Regla 76, es decir, por alguno de los fundamentos allí previstos y no mediante una moción de recusación general de todos los jueces de Bayamón bajo el título inapropiado de *"moción de traslado"*. █

### III

Con estos antecedentes, se deniega la expedición del auto de *certiorari*. Lo acordó el Tribunal y lo certifica la señora Secretaria General. La Juez Rodríguez de Oronoz emitió voto disidente.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 26**

1. El texto completo de la regla es el siguiente:

*"A solicitud de El Pueblo o del acusado, un tribunal ante el cual se hallare pendiente una causa criminal podrá trasladarla a otra sala por los siguientes fundamentos:*

*(a) Cuando por cualquier razón que no sea una de las enumeradas en la Regla 76 no pueda obtenerse un juicio justo e imparcial en el distrito donde está pendiente la causa.*

*(b) Cuando por razón de desorden público que exista en el distrito no pueda obtenerse un juicio justo e imparcial para el acusado y El Pueblo con seguridad y rapidez.*

*(c) Cuando la vida del acusado o de algún testigo pueda ponerse en peligro si se juzgare la causa en tal distrito.*

*(d) Cuando en dicho distrito no pueda obtenerse un jurado para el juicio del acusado.*

**2.** La Regla 76 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.76, dispone:

*"En cualquier proceso criminal, El Pueblo o la defensa podrán solicitar la inhibición [sic, recusación] del juez por cualquiera de los siguientes motivos:*

*"(a) Que el juez haya sido fiscal o abogado de la defensa en el caso.*

*(b) Que el juez sea testigo esencial en el caso.*

*(c) Que el juez haya presidido el juicio del mismo caso en un tribunal inferior.*

*(d) Que el juez tenga interés en el resultado del caso.*

*(e) Que el juez tenga relaciones de parentesco por consanguinidad o afinidad dentro del cuarto grado con el acusado, con la víctima del delito imputado, o con el abogado defensor o el fiscal.*

*(f) Que el juez tenga opinión formada o prejuicio a favor o en contra de cualquiera de las partes, o haya prejuzgado el caso.*

*(g) Que el juez haya actuado como magistrado a los fines de expedir la orden de arresto o de citación o a los fines de determinar causa probable en la vista preliminar."*

**3.** Reiteramos que no estamos resolviendo que el Juez Flores hiciera tal llamada sino meramente aceptando lo alegado para fines de disponer del recurso únicamente. Lo mismo aplica a la supuesta llamada al Juez Gómez Colón.

**4.** No es necesario que discutamos la alegación de que fue el Juez Administrador Flores y no el juez que presidía la vista en alzada quien resolvió y denegó la moción de suspensión del 20 de diciembre de 1994, pues el recurso no es contra dicha resolución. Tan solo mencionaremos que la Regla 10(b) de las Reglas de Administración del Tribunal de Primera Instancia, 4 L.P.R.A. Ap.II-A, R.10(b), dispone en su primer párrafo lo siguiente:

*"Toda moción de suspensión o transferencia, o estipulación de suspensión hecha antes de la vista en casos criminales, **será resuelta o aprobada por el Juez Administrador,** excepto cuando éste trasladare el asunto para su determinación al juez que hubiere de entender o estuviere entendiendo en el caso".* (Enfasis nuestro.)

En el recurso instado la controversia a resolver es si un tribunal puede rechazar de plano una *moción de traslado* que cumple con los requerimientos de la Regla 82 de las Reglas de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R. 82, sin la celebración de una vista evidenciaria.

## I

En nuestro ordenamiento las Reglas 81 a la 88 de las de Procedimiento Criminal regulan el traslado de las causas en la esfera criminal. Los preceptos constitucionales de que todo acusado tiene el derecho a que su juicio se ventile ante un jurado imparcial compuesto por vecinos del distrito donde alegadamente ocurrieron los hechos imputados (Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico) y el derecho a un juicio justo e imparcial por imperativo de la cláusula del debido proceso de ley delimitan la aplicación de estas reglas. *Pueblo v. Rodríguez Zayas*, \_\_\_ D.P.R. \_\_\_ (1995), **95 J.T.S. 3.**

Entre las citadas reglas, la 81 autoriza a los tribunales a ordenar el traslado de un caso si se demuestra que están presentes algunos de los fundamentos allí enumerados, entre los cuales está el de que no puede obtenerse un juicio justo e imparcial en el distrito donde está pendiente la causa.

La Regla 82 contiene los requisitos que debe cumplir la moción de traslado, se expresa cómo y cuándo se presenta y se específica que la moción debe ser señalada para discutirse.

Por otra parte, en la Regla 83 se dispone que al resolver la moción de traslado el tribunal debe considerar los hechos alegados en ella y en la declaración jurada que se acompaña. Se requiere que el tribunal considere, además, cualesquiera otras declaraciones juradas que se presenten y la evidencia que se admita en la vista que se celebre para resolver dicha moción.

Nuestro Tribunal Supremo ha establecido que el peso de la prueba para demostrar que procede el traslado recae sobre quien lo solicita y que el promovente de la moción tiene que presentar prueba de hechos específicos, no bastando meras creencias, opiniones o conclusiones. *Pueblo v. Rodríguez Zayas, supra; Pueblo v. Sánchez Pérez,* 122 D.P.R. 606 (1988); *Maldonado v. Corte,* 71 D.P.R. 537 (1950).

Así pues, debido a que la concesión de una solicitud de traslado no es asunto para hacerse livianamente, *Pueblo v. Rodríguez Zayas, supra,* tanto las Reglas de Procedimiento Criminal como la jurisprudencia del Tribunal Supremo reconocen la necesidad de una vista evidenciaria para que el promovente de la moción de traslado, sobre quien recae el peso de la prueba, presente prueba de los hechos específicos que según él evidencian la necesidad del traslado de la causa. Reglas 82 y 83 de las de Procedimiento Criminal; *Pueblo v. Rodríguez Zayas, supra; Pueblo v. Sánchez Pérez, supra; Maldonado v. Corte, supra.*

Expuesta tanto la norma como los criterios rectores para establecer la procedencia de una solicitud de traslado en un caso criminal, procedemos a aplicarla a los hechos específicos de la presente controversia.

## II

Previo a la vista preliminar el peticionario presentó una moción de traslado al amparo de la Regla 81(a) de las Reglas de Procedimiento Criminal y una solicitud de vista evidenciaria a tenor con la Regla 83 de las Reglas de Procedimiento Criminal.

Alegó el peticionario en síntesis que la conducta impropia, indebida y antiética del

Ministerio Fiscal era violatoria del debido proceso de ley y había maculado el foro donde se encontraba pendiente la causa afectando el derecho del imputado a un juicio justo e imparcial.

El Tribunal de Primera Instancia, Subsección de Distrito, declaró la moción no ha lugar en todas sus partes, resolviendo que no era necesaria la celebración de una vista para resolverla ya que el 20 de enero de 1995 la defensa había argumentado ante el Tribunal el alegado incidente que motivaba la solicitud de traslado.

El Panel coincide con el juez de instancia en que ya los fundamentos aducidos para fundamentar la moción de traslado habían sido argumentados el 20 de enero de 1995 y por lo tanto no había propósito útil o legítimo en celebrar una vista evidenciaria. Diferimos.

**Primero**. Nuestro ordenamiento penal no requiere la previa determinación de *"utilidad"* o *"legitimidad"* para la celebración de la vista evidenciaria de las Reglas 82 y 83 de Procedimiento Criminal. No podemos nosotros por tanto incorporar dichos requisitos a estas reglas. Las leyes penales, incluyendo las reglas procesales penales que son adoptadas de conformidad a un proceso ordenado en la Constitución que le permite un nivel de intervención a la Asamblea Legislativa, deben ser interpretadas judicialmente según su sentido claro y aceptable. De ser necesario interpretar la ley para determinar cual fue la voluntad legislativa, rige el principio de que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorezca al acusado y liberalmente en cuanto a lo que lo favorezca. *Pueblo v. Sierra Rodríguez*, ___ D.P.R ___ (1995), **95 J.T.S. 11**.

**Segundo**. No es nuestra función como foro apelativo entrar en los méritos de la moción de traslado y resolver si ésta procede o no. Tampoco nos toca resolver si la moción de traslado es realmente una moción de recusación bajo la Regla 76 de Procedimiento Criminal. Ambos asuntos estarían entre los que precisamente debería resolver al juez de instancia, luego de celebrada la vista evidenciaria y recibida toda la prueba que tuviera a bien presentar el promovente de la moción de traslado. Recordemos que es doctrina reiterada que la valoración de la prueba corresponde al foro primario, ya que éste está en mejor posición para evaluarla, pues tiene la oportunidad de ver y oír a los testigos declarar. *Pueblo v. Maisonave Rodríguez*, ___ D.P.R. ___ (1991), **91 J.T.S. 67**.

**Tercero**. Presentada la moción de traslado, celebrada la vista evidenciaria y evaluada la prueba admitida el tribunal no está limitado a acceder o denegar el traslado. Aún si el tribunal deniega el traslado puede tomar providencias especiales o medidas cautelares para velar porque pueda celebrarse un juicio justo e imparcial en la sala con competencia. *Pueblo v. Rodríguez Zayas, supra.*

**Cuarto**. En *Rodríguez Zayas, supra,* expresamente se señaló que *"el promovente de una solicitud de traslado tiene que presentar prueba de hechos específicos que evidencien el supuesto perjuicio"*. El Panel concluye que el 20 de enero de 1995 la defensa argumentó ante el tribunal los hechos específicos que fundamentaban la moción de traslado. ¿Cómo sabemos cuáles fueron los argumentos de la defensa ese día si no consta en autos la transcripción o la minuta de los sucesos de ese día? En su resolución el juez recurrido escuetamente señala *"que el 20 de enero de 1995 la defensa argumentó el alegado incidente que motivó la solicitud de [traslado]..."*. ¿Nos permiten los documentos que tenemos ante nuestra consideración concluir que ese día la defensa argumentó toda la prueba a su haber en cuanto a los hechos específicos que evidenciaban que el imputado no podía obtener un juicio justo e imparcial? Estimamos que no.

**Quinto**. El planteamiento de la defensa sobre conducta impropia del Ministerio Fiscal (prosecutorial misconduct) es un tema difícil al que se enfrentan los tribunales hoy día. La

conducta impropia de un fiscal en un caso criminal, de violar algún Canon de Etica, podría ser motivo para un procedimiento disciplinario ante el foro dispuesto por la ley. Pero una conducta del Ministerio Fiscal que infrinja el principio fundamental de juicio justo puede ser también motivo de remedios judiciales en el propio caso criminal en que se suscita dicha conducta. Véase Fisher, M.T., *Harmless Error, Prosecutorial Misconduct and Due Process: There's More Due Process Than The Bottom Line*, 88 Columbia L.Rev., 1298 (1988). Morton L.M., *Seeking the Elusive Remedy for Prosecutorial Misconduct: Suppression Dismissal or Discipline?*, Vol. VII No.4, Georgetown J. of Legal Ethics, 1083 (1994). Un caso reciente en que el Tribunal Supremo de los Estados Unidos se enfrenta al tema de conducta impropia de parte del Ministerio Fiscal demuestra cuán dividido está dicho tribunal en cuanto a este tema y cuán intolerantes podrían ser cuatro de sus jueces con determinada conducta impropia del representante del gobierno en un caso criminal. Véase *U.S. v. Willams*, 112 S.Ct. 1735 (1992). La opinión disidente del Juez Stevens, a la cual se unen los Jueces Blackmun, O'Connor y Thomas, expresa lo siguiente:

*"Unlike the Court, I am unwilling to hold that countless forms of prosecutorial misconduct must be tolerated --no matter how prejudicial they may be, or how seriously they may distort tbe legitimate function of the grand jury-- simply because they are not proscribed by Rule 6 of the Federal Rules of Criminal Procedures or a statute that is applicable in grand jury proceedings. Such a sharp break with the traditional role of the federal judiciary is unprecedented, unwarranted, and unwise. Unrestrained prosecutorial misconduct in grand jury proceedings is inconsistent with the administration of justice in the federal courts and should be redressed in appropriate cases by the dismissal of indictments obtained by improper methods."* Pág. 1753.

En el presente caso una de las alegaciones de conducta impropia de parte del Ministerio Fiscal es que se presionó a la juez a acceder a lo peticionado por el Pueblo so pena de enfrentar dicha juez problemas con su renominación al cargo judicial. Lo menos que ameritaba una alegación tan sería era una vista en la cual la defensa pudiera presentar la prueba específica que exige tanto la ley como la jurisprudencia. De encontrar probadas las alegaciones, el tribunal podía decidir entonces cuáles serían los remedios adecuados para enfrentar la conducta del Ministerio Fiscal. Entre estos estarían, no sólo el traslado de la causa, sino la adopción de medidas diseñadas por el juez para proteger la integridad del proceso judicial en la propia jurisdicción.

### III
Por las razones que hemos expuesto disentimos. Hubiésemos paralizado los procedimientos en el foro de instancia y concedido al promovente de la moción de traslado el derecho a ser oído en una vista evidenciaria.

**Dolores Rodríguez de Oronoz**
**Juez de Apelaciones**